COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Annunziata
Argued at Alexandria, Virginia


MARVIN TROY BUTLER
                                              OPINION BY
v.    Record No. 1403-98-4           JUDGE JAMES W. BENTON, JR.
                                         FEBRUARY 29, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                      Donald M. Haddock, Judge

            James C. Love, IV (Love & Associates, P.C.,
            on brief), for appellant.

            John H. McLees, Jr., Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     Marvin Troy Butler was convicted of possession of cocaine

with intent to distribute.  On appeal, he contends the trial

judge erred in denying his motions to suppress the evidence and

to set aside the verdict based on juror misconduct.  We affirm

the conviction.

                                I.

     Butler contends the trial judge should have suppressed the

evidence because the police unlawfully impounded and conducted an

inventory search of his vehicle.  In reviewing the trial judge's

denial of Butler's motion to suppress, "[w]e view the evidence in

the light most favorable to [the Commonwealth], the prevailing

party below, and we grant all reasonable inferences fairly

deducible from that evidence."  Commonwealth v. Grimstead, 12 Va.

App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  We consider de novo

whether the evidence, so viewed, establishes that the officers unlawfully infringed upon Butler's Fourth Amendment right to be free from unreasonable searches and seizures.  See McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc).

Shortly after midnight, Thomas Gregg, an Alexandria police officer, determined that a motor vehicle was traveling forty-three miles-per-hour in a thirty-five mile-per-hour zone. From the license plate number, he learned that Butler owned the car and that Butler's permit to drive had been suspended. Officer Gregg recalled that another officer had stopped Butler the previous week.  On that occasion, Butler had run from the officer, who later found money and a gun in the vicinity of Butler's vehicle.

After Officer Gregg requested assistance from other officers, Butler's vehicle turned to enter the parking garage of an apartment complex.  Butler entered a code, which opened a steel gate, and drove into the garage.  Officer Gregg followed Butler into the garage, stopped behind Butler's vehicle, and activated his emergency lights.  When Butler began to exit his vehicle, Officer Gregg ordered him to put his hands on the vehicle's trunk.  Officer Gregg frisked Butler for weapons and attempted to arrest him for driving while his permit was suspended.  Butler resisted.  After a scuffle, Officer Gregg put handcuffs on Butler and placed him in the police car.

Other officers arrived and entered the garage after Officer Gregg used the emergency release to open the gate.  Butler told the officers he did not live in the apartments, declined to say

-

whom he was visiting, and refused to tell them where he lived. Officer Gregg testified that he made the inquiries in order to seek permission of a resident to leave Butler's locked vehicle in the garage. Officer Gregg also testified that a police officer who lived in the apartment complex said Butler's vehicle had to be moved because it did not have a decal authorizing it to park in the garage. Lacking permission of a resident or manager of the apartment complex to leave the vehicle in the garage, the police impounded Butler's vehicle and conducted an inventory search.

When inventorying the vehicle, the police found two rocks of crack cocaine and cash. After Officer Gregg transported Butler to the police station, he searched the backseat of his police car and found an additional chunk of crack cocaine hidden under the seat.

II.

The Supreme Court of Virginia has previously recognized the right of the police to impound a vehicle in the possession of a person arrested away from his or her residence, provided there are no immediate means to protect the vehicle and the police act pursuant to reasonable policies and procedures. See Cabbler v. Commonwealth, 212 Va. 520, 522-23, 184 S.E.2d 781, 782-83 (1971). Inventory searches that are conducted in accordance with those policies and procedures are reasonable, see id.; see also South Dakota v. Opperman, 428 U.S. 364, 373-74 (1976), absent a suggestion that the search "was a pretext concealing an investigatory police motive." Opperman, 428 U.S. at 376.

-

Butler was arrested as he exited his vehicle, which was parked in the gated garage of an apartment complex in which he claimed he was not a resident. He did not claim that he was a guest of any resident of the complex and provided no basis to support a conclusion that he had authority to park in the space. Officer Gregg testified that, under these circumstances, it was department policy to impound and inventory the vehicle.

These facts establish that the decision to impound Butler's vehicle was reasonable. In drawing this conclusion, we note that the provisions of Code § 19.2-80.1 are inapplicable to this case because no other licensed driver was present at the scene who could have been designated by Butler to drive the vehicle from the garage. The police, acting pursuant to their established policy, therefore, had a legitimate reason to impound and inventory Butler's vehicle. Accordingly, we hold that the trial judge did not err in refusing to suppress the evidence discovered during the inventory search.

III.

The record discloses that during voir dire, one of the prospective jurors indicated that he would have "a little bit" of discomfort if a defendant did not testify in his own defense. When told that "[t]he law specifically provides that a defendant need not testify and that a jury cannot use that against a defendant," the prospective juror said he could abide by the law. The record indicates that the only prospective juror with his first name did not serve on the jury.

Butler did not testify at trial. After the trial, defense counsel filed a motion to set aside the verdict. In support of the motion, defense counsel filed an affidavit that a juror told him other jurors had said during deliberations that if the cocaine was not Butler's, he should have testified to that effect. The trial judge denied the motion.

"Virginia has been more careful than most states to protect the inviolability and secrecy of jury deliberations, adhering to the general rule that the testimony of jurors should not be received to impeach their verdict, especially on the ground of their own misconduct." Kasi v. Commonwealth, 256 Va. 407, 425, 508 S.E.2d 57, 67 (1998), cert. denied, 119 S. Ct. 2399 (1999). The Supreme Court of Virginia generally has "limited findings of prejudicial juror misconduct to activities of jurors that occur outside the jury room." Jenkins v. Commonwealth, 244 Va. 445, 460, 423 S.E.2d 360, 370 (1992) (citation omitted). Indeed, the Court has held that although a trial judge may receive testimony concerning juror misconduct, see Commercial Union Ins. Co. v. Moorefield, 231 Va. 260, 265, 343 S.E.2d 329, 333 (1986), the

-

trial judge is not required to examine jurors in response to allegations of jury misconduct that is confined to the jury room. See Jenkins, 244 Va. at 460, 423 S.E.2d at 370.

Butler has not alleged that any extraneous evidence was injected into the jury's deliberations. See Evans-Smith v. Commonwealth, 5 Va. App. 188, 210, 361 S.E.2d 436, 449 (1987) (finding reversible error where the trial judge refused to examine the jurors where the defendant provided affidavits indicating that some jurors had consulted an almanac during their deliberations). Butler contends that because only one of the prospective jurors indicated that he would be troubled by a defendant's failure to testify, some of the other jurors must have lied during voir dire. The possibility that some jurors discussed Butler's failure to testify does not necessarily mean, however, that they lied during voir dire.

The Fifth Amendment provides, in pertinent part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The trial judge instructed the jury that "there is no burden on the defendant to produce any evidence." If during their deliberations, some of the jurors discussed the absence of evidence, that discussion was intrinsic to the deliberative process and the "alleged misconduct, if it occurred, was clearly within the confines of the jury room." Jenkins, 244 Va. at 460, 423 S.E.2d at 370. Thus, we cannot say the trial judge erred in denying the motion.

For the foregoing reasons, we affirm the judgment.

Affirmed.

-