COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Coleman and Bumgardner
Argued at Salem, Virginia


RONNIE JAMES GOODE

v.      Record No. 1643-98-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
CHIEF JUDGE JOHANNA L. FITZPATRICK
SEPTEMBER 28, 1999


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Mosby G. Perrow, III, Judge

Margaret A. Nelson, Senior Assistant Public
Defender, for appellant.

Donald E. Jeffrey, III, Assistant Attorney
General (Mark L. Earley, Attorney General,
on brief), for appellee.


Ronnie James Goode (appellant) was indicted by a grand jury

for possession of cocaine, in violation of Code § 18.2-250.

Appellant filed a pretrial motion to suppress the cocaine found

on his person, contending that the police officer had neither a

warrant nor probable cause for an arrest. The trial court

denied the motion and subsequently convicted appellant in a

bench trial. For the following reasons, we affirm.

I.

On an appeal from a trial court's ruling on a suppression

motion, we view the evidence in the light most favorable to the

---

[*] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

party prevailing below, in this case the Commonwealth.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  However, "'[u]ltimate questions of reasonable suspicion and probable cause . . . are reviewed de novo on appeal.'"  McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)).  Similarly, whether a seizure occurred at all is both a factual and legal question for this Court to review de novo.  See id. at 198, 487 S.E.2d at 261.

The evidence established that approximately two weeks prior to appellant's arrest, Officer Benedict (Benedict) and Officer Graves (Graves) went to 2200 Poplar Street in the City of Lynchburg and spoke to Emma Wade (Mrs. Wade), one of the owners of the property.  Mrs. Wade stated she was "interested in getting a letter on file" to ensure that the police would enforce the trespassing laws on her property.  She also indicated that she and her husband were elderly and that they were the only two residents of the property.  The letter, signed by Mrs. Wade on February 23, 1998, stated the following:

> In order to enforce the No Trespassing signs posted on my property at 2200 Poplar Street[,] I would like to request the assistance of the Lynchburg Police Department.
>
> Increasingly, I have experienced problems with trespassers on my porch and around my yard.  I have been advised that these subjects are hiding there [sic] drugs behind

- 2 -

my house and selling them on the corner of
Poplar St. and Florida Ave.

At the time of the instant offense, Benedict was aware that Mrs. Wade's letter requesting enforcement of the trespassing laws was on file with the police department.

On March 3, 1998, at approximately 1:40 a.m., Benedict drove by the Wade residence, which had the no trespassing sign posted, and saw appellant and another individual "walking through Wade's yard." The two men appeared to be between twenty and forty years old, and the officer did not observe an elderly man with them. Benedict also noticed that the lights in the house were off.[1]

Officer Benedict exited his vehicle and approached the two men, stopping within two feet of appellant. Benedict testified as follows:

> Q. And did you get out of your vehicle and approach him?
>
> A. Yes.
>
> Q. And did you speak with him?
>
> A. Yes.
>
> Q. What did you say to him, if anything?
>
> A. When I got to him, I asked him if he lived there.

---

[1] The Commonwealth introduced into evidence a drawing of the property, including the streets, residence, trespassing sign and location of appellant when the officers first arrived on the scene.

Q.  And what was his response?

A.  He said nothing.

     *     *     *     *     *     *     *

Q.  He didn't respond at all?

A.  He said nothing at all.

Q.  And did the other subject with him say
    anything?

A.  No.

Q.  Did you see where his hands were?

A.  Yes.

Q.  Where were his hands?

A.  He had some sort of shirt on [sic]
    which had pockets in the front and he
    had his hands in the pockets.

Q.  Both hands?

A.  Both hands.

Q.  When the Defendant didn't respond to
    your question, what did you do at that
    point?

A.  I placed him under arrest for
    trespassing.

In a search incident to arrest, Benedict found a sandwich baggie

containing .39 grams of cocaine in the appellant's right hand.

    Mrs. Wade testified that she had been acquainted with

appellant for about ten to fifteen years and she considered him

a friend.  She had never denied appellant access to her

property, and he had been in her house on several occasions.

- 4 -

However, Mrs. Wade also stated that she had not given anyone permission to be on her property late at night and that it was uncommon for appellant to be there at that hour of the night.

The trial court found that Officer Benedict had probable cause to arrest appellant and that the search incident to the arrest was lawful.  The trial judge stated as follows:

> It's 1:40 in the morning.  It's in the middle of the night.  [Appellant] was walking through the yard in the vicinity of a No Trespassing sign.  I realize the sign is facing the street, but the officer doesn't know whether he approached the house from the street and circled it or whether he's casing the joint.
>
> He doesn't know what's going on.  And when [appellant] doesn't answer, he's either got to release him or arrest him. . . . Your motion is overruled.
>
>    *     *     *     *     *     *     *
>
> . . . The question is whether there was probable cause to arrest [appellant] for trespass at 1:40 a.m. in the morning when he's walking on property and the police observed him and there's a No Trespassing sign in the vicinity.  Actually, there are two [individuals] on the property and the police have been asked to enforce the no trespass. . . . The motion is overruled.

At the conclusion of the evidence, the trial court found appellant guilty as charged.

## II.

Appellant concedes that Officer Benedict had a reasonable basis to approach him and conduct a Terry stop.  However, he

- 5 -

contends that the circumstances did not rise to the level of probable cause to arrest for trespass solely because appellant failed to respond to Benedict's inquiry whether appellant lived on the property. He argues that Benedict was required to conduct further investigation in order to establish probable cause for arrest. Accordingly, the cocaine seized in the search incident to his arrest should have been suppressed. We disagree.

Fourth Amendment jurisprudence recognizes three categories of police-citizen confrontations, including the following: "(1) consensual encounters, (2) brief, minimally intrusive investigatory detentions, based upon specific, articulable facts, commonly referred to as Terry stops, and (3) highly intrusive arrests and searches founded on probable cause." Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995) (citations omitted). "[P]robable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense is being committed." Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981), cert. denied, 465 U.S. 906 (1982).

Probable cause is determined by the totality of the circumstances and does not require "an actual showing" of

criminal activity, but, rather, "only a probability or substantial chance" of such activity. Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983). Additionally, we have recognized that "[t]rained and experienced officers . . . may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer." Richards v. Commonwealth, 8 Va. App. 612, 616, 383 S.E.2d 268, 270-71 (1989).

In the instant case, Officer Benedict observed appellant and another man walking through the yard of the home of an elderly couple in the middle of the night. The lights in the house were off. Benedict knew that the owners did not want trespassers on their property and that Mrs. Wade had signed a letter requesting police enforcement of the posted no trespassing signs. The letter also indicated that Mrs. Wade "experienced problems with trespassers on [her] porch and around [her] yard." The letter specified that with the exception of her, her husband, and a few guests, there should be no one else on her property. Additionally, the area was known for illegal drug sales. When Benedict approached appellant and asked if he lived in the house, appellant did not respond, but stood silent, with his hands in his pockets. Under the totality of the circumstances, Benedict had probable cause to arrest appellant for trespassing. See Langston v. Commonwealth, 28 Va. App. 276,

283-84, 504 S.E.2d 380, 383 (1998) (holding that the defendant's actions, standing and walking on property known to be abandoned with "no trespassing" signs, gave the officers probable cause to believe that defendant was trespassing); see also Jordan v. Commonwealth, 207 Va. 591, 596, 151 S.E.2d 390, 394 (1966) (holding that "a police officer may arrest without a warrant when a misdemeanor is committed in his presence, and . . . when a person without authority of law goes upon the lands, buildings or premises of another after having been forbidden to do so by a sign or signs . . .").[2]  Because Officer Benedict had probable cause to arrest appellant for trespassing, the search incident to arrest was lawful.  Accordingly, appellant's conviction is affirmed.

Affirmed.

---

[2] Ewell v. Commonwealth, 254 Va. 214, 491 S.E.2d 721 (1997), is factually distinguishable from the instant case.  In Ewell, the Supreme Court held the arresting officer did not have a reasonable suspicion that the defendant may have been engaged in trespassing or any other activity.  The Court noted that the officer "merely observed an unfamiliar automobile and its operator in the parking lot of the apartment complex about 12:30 a.m."  Id. at 217, 491 S.E.2d at 723.  Accordingly, the Court concluded that the defendant was seized in violation of her Fourth Amendment rights.  See id.  However, in the present case, appellant was walking in the yard of a private residence at 1:40 a.m.  Officer Benedict was patrolling the area in response to a specific request to enforce the no trespassing signs, and he was aware that the property owners experienced problems with drug sales in their yard.