COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Annunziata
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                      MEMORANDUM OPINION* BY
v.    Record No. 2741-01-2            JUDGE LARRY G. ELDER
                                         FEBRUARY 26, 2002
ROBERT LEE BROWN


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                      Gary A. Hicks, Judge

          Steven A. Witmer, Assistant Attorney General
          (Randolph A. Beales, Attorney General, on
          brief), for appellant.

          Christopher A. Bain (Goodwin, Sutton & DuVal,
          P.L.C., on brief), for appellee.


     Robert Lee Brown (defendant) stands indicted for possession

of cocaine.  Pursuant to Code § 19.2-398, the Commonwealth

appeals a pretrial ruling granting defendant's motion to

suppress all evidence resulting from a routine traffic stop

which he contended evolved into an unlawful seizure.  The trial

court apparently found that the questioning which led to

defendant's arrest constituted both an unreasonable seizure and

a custodial interrogation for which defendant had not been read

his Miranda rights.  Under the particular facts of this case, we

hold that the brief stop supported by probable cause and the

_____
     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

limited questioning which led to defendant's admitting he had illegal drugs in his possession violated neither the Fourth nor the Fifth Amendment. Thus, we reverse the trial court's ruling and remand for further proceedings consistent with this opinion.

I.

BACKGROUND

On March 28, 2001, while on routine patrol on the interstate in Henrico County, State Trooper D.J. Corbett observed a vehicle traveling 68 miles per hour in a 55-mile-per-hour zone. Trooper Corbett activated his blue lights, and the vehicle pulled to the shoulder and stopped. Trooper Corbett asked the driver, defendant, for his license and registration. Because the car was rented, the rental agreement served as the registration.

Defendant gave Trooper Corbett his license, and while defendant was retrieving his rental agreement, Trooper Corbett asked him why he was speeding. Defendant responded that he was late for court in New York. Trooper Corbett asked defendant why he was going to court, and defendant replied "that he had a possession charge." Suspecting defendant might have drugs in his possession at that time, as well, Trooper Corbett then asked defendant, "[W]ell, you don't have anything illegal on your person now, do you?" Defendant said he did, and when Trooper Corbett asked him what it was, defendant responded that he had some marijuana. At the time defendant admitted having marijuana

-

in his possession, he was still looking for his rental agreement.

Trooper Corbett then asked defendant "if he minded [Trooper Corbett's] search[ing] his person." Defendant responded, "No," and said "it was in his left front pants pocket." Trooper Corbett then found a small glass vial containing a powdered substance which he concluded was cocaine, and he placed defendant under arrest for possessing cocaine. The arrest occurred five to ten minutes after Trooper Corbett first activated his blue lights to effect the traffic stop.

Defendant moved to suppress the evidence. In granting the suppression motion, the trial court concluded that Trooper Corbett's questions to defendant about "possession" were not supported by reasonable suspicion and, thus, impermissibly exceeded the scope of the stop. It also ruled that by pursuing this alternate investigation, Trooper Corbett turned the encounter into a custodial interrogation.

II.

ANALYSIS

On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, here the defendant, granting to the evidence all reasonable inferences deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly

-

wrong' or without evidence to support them," McGee v.

Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997)

(en banc), but we review de novo the trial court's application

of defined legal standards such as probable cause and reasonable

suspicion to the particular facts of the case, Ornelas v. United

States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d

911 (1996).

A.

CUSTODIAL INTERROGATION UNDER THE FIFTH AMENDMENT

Although "Miranda warnings are required whenever a suspect

is subject to 'custodial interrogation,'" not every detention

"constitute[s] a custodial interrogation for purposes of

Miranda."  Cherry v. Commonwealth, 14 Va. App. 135, 140, 415

S.E.2d 242, 244 (1992) (quoting Miranda v. Arizona, 384 U.S.

436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966)).

> A routine, roadside traffic stop and
> the usual questioning associated with such a
> brief stop generally will not be considered
> "custodial interrogation" because the
> detention is usually of very short duration
> and the attendant circumstances "are not
> such that the motorist feels completely at
> the mercy of police."  Such stops are
> usually in public and only one or perhaps
> two officers are usually present.
> Consequently, Miranda warnings are not
> required prior to the type [of] questioning
> usually associated with such stops.

Id. at 138-39, 415 S.E.2d at 243-44 (quoting Berkemer v.

McCarty, 468 U.S. 420, 437-38, 104 S. Ct. 3138, 3148-49, 82

L. Ed. 2d 317 (1984)) (citation omitted).  Although a stop based

-

on reasonable suspicion to conduct a narcotics investigation may not be a "routine" traffic stop, it nevertheless does not become a custodial interrogation simply because the subject is narcotics. Id. A suspect is "'in custody' for purposes of Miranda [only] if [he] has been arrested or if his freedom of action has been curtailed to a degree associated with arrest." United States v. Sullivan, 138 F.3d 126, 130 (4th Cir. 1998).

Here, Trooper Corbett had probable cause to stop defendant for speeding. The stop occurred on the interstate, in public view, Trooper Corbett was the only officer at the scene, and the stop was brief, lasting no more than five to ten minutes. Trooper Corbett immediately requested defendant's driver's license and registration and asked him why he was speeding, routine actions in a traffic stop. Defendant indicated he was late for a court appearance. When Corbett inquired about the nature of the court appearance, defendant responded that it was a possession charge. Trooper Corbett's inquiry as to whether defendant had any illegal substances in his possession at that time, although unrelated to the reasons for an ordinary traffic stop, did not convert the brief encounter into a formal arrest or indicate to defendant that his freedom of movement was being curtailed to the degree associated with a formal arrest.

Thus, although we defer to the trial court's findings of fact, we hold as a matter of law that defendant was not subject

to a custodial interrogation when he admitted having marijuana in his possession.

B.

QUESTIONING ABOUT DRUG POSSESSION UNDER THE FOURTH AMENDMENT

"The 'custody' that implicates the Miranda rule is conceptually distinct from a seizure implicating the Fourth Amendment. . . . Even though a routine traffic stop does not amount to a custodial detention of the motorist, it does constitute a 'seizure' within the meaning of the Fourth Amendment." Sullivan, 138 F.3d at 131.

An officer may effect a traffic stop when, inter alia, he has probable cause to believe a traffic violation has occurred. See Dickerson v. Commonwealth, 35 Va. App. 172, 177, 543 S.E.2d 623, 626 (2001). He may "request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation." United States v. Shabazz, 993 F.2d 431, 437 (5th Cir. 1993). Once the purpose of the stop has been completed, the stop may not be extended absent consent or additional information amounting to reasonable suspicion or probable cause. See Dickerson, 35 Va. App. at 178, 543 S.E.2d at 626. However, during the stop, the officer may question the person on subjects not directly related to the reasons which provided the basis for the stop, even if he lacks reasonable suspicion as to the unrelated subjects, as long as "the detention to that point continue[s] to be supported by the facts

-

that justified its initiation" and "the questioning [does] nothing to extend the duration of the initial, valid seizure." Shabazz, 993 F.2d at 437 (approving questioning about travel plans and request for consent to search from driver stopped for speeding while police awaited results of computer check of driver's license); see also United States v. Childs, ___ F.3d ___, ___ (7th Cir. 2002) (en banc); State v. Hickman, 763 A.2d 330, 336-38 (N.J. Super. Ct. App. Div. 2000). But see United States v. Holt, 264 F.3d 1215, 1229-30 (10th Cir. 2001) (en banc) (rejecting reasoning of Shabazz).

Here, the evidence establishes that, at the time Trooper Corbett asked defendant whether he had "anything illegal on [his] person" and defendant responded that he was carrying marijuana, defendant was searching for and had not yet found the rental car agreement which served as the registration for the vehicle. Thus, the purpose of the stop had not yet been achieved when defendant admitted he had marijuana in his possession. The evidence also established that the entire stop, from the time Trooper Corbett activated his blue lights until he found the cocaine in defendant's pocket, took no more than five to ten minutes. Thus, at the time defendant told Trooper Corbett he had marijuana in his possession, which provided probable cause to arrest defendant for possession of marijuana, "the detention . . . continued to be supported by the facts that justified its initiation" and "the questioning did nothing to

-

extend the duration of the initial, valid seizure." Shabazz, 993 F.2d at 437.

In short, under the facts of this case, Trooper Corbett's seizure of the cocaine violated neither the Fourth nor the Fifth Amendment. The questioning which led to the discovery of the cocaine occurred during a routine traffic stop supported by probable cause, in which Trooper Corbett was entitled to obtain defendant's license and registration. The trooper's inquiry regarding whether defendant had anything illegal in his possession occurred before defendant had located his vehicle registration and, thus, did not unduly prolong the stop. Further, this questioning flowed logically from defendant's response to the officer's inquiry about why he was speeding and involved only a limited number of questions. Finally, the stop was of limited duration, lasting no more than five to ten minutes. Once defendant admitted he had marijuana in his possession, Trooper Corbett had probable cause to arrest him for that offense and to search him incident to arrest. Pursuant to that search, Trooper Corbett found what he believed to be cocaine, giving him probable cause to arrest defendant for possession of cocaine. Thus, we reverse the trial court's decision to grant the suppression motion, and we remand for further proceedings consistent with this opinion.

Reversed and remanded.

-