COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Annunziata
Argued at Richmond, Virginia


JEROME LEE WOODSON, JR.

                                    MEMORANDUM OPINION* BY
v.    Record No. 1031-01-2           JUDGE LARRY G. ELDER
                                          APRIL 30, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Robert W. Duling, Judge

          Gregory W. Franklin, Assistant Public
          Defender (Office of the Public Defender, on
          brief), for appellant.

          Marla Graff Decker, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     Jerome Lee Woodson (appellant) appeals from his bench trial

conviction for possession of cocaine in violation of Code

§ 18.2-250.  On appeal, he contends the trial court erroneously

denied his motion to suppress because the officers detained him

without reasonable suspicion of criminal activity and because

the search which yielded the cocaine exceeded the scope of

appellant's consent.  We hold the encounter became a seizure

when the officer told appellant he had committed a criminal

offense by possessing an open container of alcohol.  Assuming

without deciding the seizure was objectively reasonable, the

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

justification for the seizure ended when appellant poured out the beer at the officer's request. However, a reasonable person in appellant's position would not have felt free to leave or to decline the officer's request to search, and thus the seizure continued. Because the search was not supported by probable cause and appellant's consent was tainted by the illegal seizure, the search was unreasonable and violated the Fourth Amendment.

On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). However, we review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case. See Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996). We also review de novo the question whether a person has been seized in violation of the Fourth Amendment. Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000).

-

"Fourth Amendment jurisprudence recognizes three categories of police-citizen [contacts]: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions based upon specific, articulable facts, commonly referred to as Terry stops, and (3) highly intrusive arrests and searches founded on probable cause." Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995) (citation omitted). "A seizure occurs when an individual is either physically restrained or has submitted to a show of authority." McGee, 25 Va. App. at 199, 487 S.E.2d at 262. "Whether a seizure has occurred . . . depends upon whether, under the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave." Id. at 199-200, 487 S.E.2d at 262. Relevant factors under the "totality of the circumstances" analysis include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980) (emphases added).

The Supreme Court applied these principles in Reittinger, which involved facts similar to those in appellant's case. In Reittinger, two armed, uniformed deputies stopped the driver's van "in a rural area in the nighttime." Id. at 234, 237, 532 S.E.2d at 26, 27. One deputy approached the driver while the

-

other approached the passenger.  Id. at 234, 236, 532 S.E.2d at 26, 27.  When the deputy informed the driver that only one of the van's headlights was illuminated, the driver showed the deputy a new headlight and said he planned to install it the following day.  Id. at 234, 532 S.E.2d at 26.  The deputy decided against issuing a citation, gave the driver a verbal warning, and told him he was "'free to go.'"  Id.  Immediately thereafter, however, the deputy asked the driver whether he had any illegal weapons or drugs in the vehicle, and the driver responded there was nothing illegal in the van.  Id.  The deputy then asked three times for permission to search the van while the driver appeared to consult with the van's passengers.  Id.  Without responding expressly to the deputy's request, the driver exited the van.  Id.  The deputy saw a "'large bulge'" in the driver's pants pocket, conducted a pat-down in which he determined the bulge was "hard" and might be a weapon, and ordered the driver to remove the object, which proved to be a pipe containing marijuana residue.  Id.

The Court held

> [a]lthough Deputy Bolen had told Reittinger that he was free to go, we think that the events that transpired immediately thereafter would suggest to a reasonable person that just the opposite was the case. We do not think that a reasonable person, under the circumstances, would have considered that he was free to disregard the deputies and simply drive away.  Therefore, we conclude, from our de novo review of the facts, that Reittinger was unlawfully seized

-

> in violation of his Fourth Amendment rights
> . . . [and] that the trial court . . . erred
> in refusing to suppress the product of the
> unlawful seizure and search of Reittinger
> . . . .

Id. at 237, 532 S.E.2d at 28.

Similarly, here, we hold as a matter of law, under the totality of the circumstances, that a reasonable person in appellant's position would have believed he was not free to leave or to decline Officer Davenport's request to search. Although the vehicle appellant occupied was parked when Officer Davenport approached it, Davenport nevertheless seized appellant when he told appellant that his actions in possessing an open container of beer were illegal and asked appellant to pour the beer out. See McGee, 25 Va. App. at 200, 487 S.E.2d at 262 ("[W]hen a police officer confronts a person and informs the individual that he or she has been specifically identified as a suspect in a particular crime which the officer is investigating, that fact is significant among the 'totality of the circumstances' to determine whether a reasonable person would feel free to leave."). Thus, regardless of whether appellant's possession of the open container violated a statute or ordinance,[1] Davenport's actions constituted a seizure. Davenport's statement that he would not issue appellant a

---

[1] We assume without deciding that appellant's possession of the open container in a private vehicle did not constitute a violation of a statute or ordinance.

-

citation for the offense, rather than removing the coercive impact of the encounter, served to heighten it. A reasonable person in appellant's position would have believed that this continued cooperation with Officer Davenport's "requests" was required in order for him to avoid receiving a citation for the alcohol offense. See Florida v. Bostick, 501 U.S. 429, 438, 111 S. Ct. 2382, 2388, 115 L. Ed. 2d 389 (1991) ("[T]he 'reasonable person' test presupposes an innocent person.").

The justification for the seizure ended when appellant poured out his beer and Officer Davenport opted not to issue a citation. Nevertheless, as in Reittinger, the seizure continued because a reasonable person would not have felt free to leave when Officer Davenport, who was accompanied by a second officer during a nighttime stop, asked first for identification and then for permission to search appellant's person. See Reittinger, 260 Va. at 236-37, 532 S.E.2d at 27-28. The facts demonstrating an ongoing seizure in appellant's case are even stronger than those in Reittinger because Officer Davenport never told appellant he was free to leave.

"Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion." Segura v. United States, 468 U.S. 796, 804-05, 104 S. Ct. 3380, 3385, 82 L. Ed. 2d 599 (1984). Only three exceptions to this rule exist: "(1) evidence attributed to an independent source; (2) evidence where the connection has become

-

so attenuated as to dissipate the taint; and (3) evidence which inevitably would have been gained even without the unlawful action."  Warlick v. Commonwealth, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974).

Here, no evidence establishes an independent source or inevitable discovery.  Further, no evidence indicates that the connection between the illegal seizure and the consent was so attenuated as to dissipate the taint.  Appellant purportedly consented to be searched under circumstances in which a reasonable person would not have felt free to leave or to withhold consent.  No evidence indicated Officer Davenport told appellant that he was free to go or to refuse Davenport's request to search his person.  Thus, the connection between the illegal seizure and the consent was strong, and we hold the evidence failed to prove a purging of the primary taint.

For these reasons, we hold the trial court erroneously denied appellant's suppression motion.  Therefore, we reverse appellant's conviction and remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

Reversed and remanded.

-